# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WESTERN SURETY COMPANY** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 20-6397 |
| | : | |
| **DAVID M. CUTLER** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                                                                                 **June 30, 2021**

A township agreeing to allow an entity to develop land in their jurisdiction often requires the developer entity to sign a development agreement. The townships often seek the developer entity to provide security – known as a surety bond – issued by an insurance company payable to the township to provide the funding necessary to finish the project if the developer cannot. The insurance company often requires the principals of the developer entity to sign an agreement agreeing to repay the insurer for its payment to the township should the developer not complete the project. If the project falters and the township requires the payment of the insurance to finish the project, the insurance company and the township negotiate the payment owed to finish the project. The insurance company may then turn to collect from the developer entity and possibly the entity's principals who separately agreed to repay the insurer for payments made to the township.

Our case today involves the insurer suing the developer's principal to repay the amount it paid to two townships after the developer filed bankruptcy and the insurer negotiated and paid the townships the money they agreed necessary to finish the projects. The developer's principal does not want to pay. He filed defenses to the insurer's complaint challenging their decision to pay too much. He also sued the townships for essentially getting too good a deal from the insurance company placing him at risk for a larger judgment on his promise to repay the insurance company.

The individual guarantor sues the townships with whom he has no contractual relationship. He did not provide services to the township. The developer entity and the township agreed there are no third-party beneficiaries to their development agreement. The townships negotiated a settlement of their claims with the insurer. The insurer now seeks payment under their agreement with the developer's principal for the payments it made to the township when the developer entity failed to complete the project. While the developer's principal can and has asserted defenses to the insurance company's claims for paying too much to the townships, he has not presently plead a contractual claim against the townships under contract, third-party beneficiary, or unjust enrichment theories. He will not confer a benefit upon the townships if he is compelled to pay indemnity to the insurer. We dismiss his third-party claims against the townships with whom he has no contractual relationship and did not confer a benefit.

### I.     Alleged facts

The Cutler Group entered into separate development agreements with Warwick and Montgomery Townships for the Cutler Group to build residential developments in the townships.[1] The Cutler Group agreed to provide Montgomery and Warwick financial security through Western Surety Company bonds to guarantee Cutler Group would complete the work required by the development agreements.[2] The Cutler Group agreed the Townships could recover from their Western Surety bonds to complete the work if the Cutler Group could not finish the work contemplated in the agreements.[3] David M. Cutler signed the development agreements as the Chief Executive Officer, president, and majority owner of the Cutler Group.[4].

The Warwick development agreements included a "Third Party Beneficiaries" provision which stated, "[i]t is expressly understood and agreed that no third party beneficiaries are created

by this Agreement."[5] Mr. Cutler signed the Warwick development agreements on behalf of the Cutler Group.[6]

Western Surety and Mr. Cutler also signed an agreement. Mr. Cutler agreed to indemnify Western Surety for payments it made to townships under issued surety bonds.

The Cutler Group filed for bankruptcy before finishing the work contemplated in the Warwick and Montgomery development agreements.[7] Warwick and Montgomery subsequently made claims on their respective Western Surety bonds.[8] Western Surety settled with Warwick for $665,000.[9] Western Surety settled with Montgomery for around $622,000.[10] Montgomery also drew $900,000 from Cutler Group lines of credit.[11]

Western Surety sued Mr. Cutler for indemnification of the settlement amounts paid to Warwick and Montgomery. It alleges Mr. Cutler, individually and on behalf of the Cutler Group, agreed to indemnify Western for any and all claims and expenses Western Surety may incur in connection with providing surety bonds on behalf of the Cutler Group.[12] Mr. Cutler filed an answer arguing "Western's claims are barred, in whole or in part, by Western's failure to mitigate its damages" and "Western's claims are barred, in whole or in part, because Western's damages were caused by Western's conduct."[13]

Mr. Cutler then filed a third party complaint against Warwick and Montgomery for breach of contract and, alternatively, unjust enrichment, claiming Warwick and Montgomery "did not utilize a substantial portion of the settlement funds for completion of the work contemplated in the…Development Agreement[s]."[14]

II. Analysis

Warwick and Montgomery now move to dismiss Mr. Cutler's third-party complaint.[15] Warwick argues Mr. Cutler cannot sue for breach of the Warwick development agreements

3

because the contracting parties – Warwick and the Cutler Group – did not intend to make him a third-party beneficiary, and indeed, the development agreements expressly disclaim an intent to create third-party beneficiaries at all. Montgomery similarly argues Mr. Cutler does not plead sufficient facts demonstrating the Cutler Group and Montgomery intended to make him a third-party beneficiary of the Montgomery development agreements.[16] Warwick and Montgomery further argue Mr. Cutler's unjust enrichment claim fails because Mr. Cutler has not conferred a benefit on them.

Mr. Cutler concedes the dismissal of his breach of contract claim against Warwick.[17] Mr. Cutler argues, however, he pleads a breach of contract claim against Montgomery as a third-party beneficiary because he will ultimately provide the security contemplated by the Montgomery bond should Western Surety prevail in its underlying claim against him. He further argues he states unjust enrichment claims against Montgomery and Warwick because he conferred a benefit on them "should [he] be found liable to Western for the sums Western paid to Montgomery [and Warwick] based on the bonds."[18] He does not plead, nor could he, payments he made be compelled to make on his indemnity obligation to Western Surety will somehow end up in the Township's hands.

We conclude Mr. Cutler fails to state a breach of contract claim against Montgomery because he does not plausibly allege he is a third-party beneficiary of the Montgomery development agreements. Mr. Cutler also fails to state unjust enrichment claims against Montgomery and Warwick because he fails to allege he conferred any benefit on them. We accordingly dismiss his breach of contract and unjust enrichment claims without prejudice.

### A. Mr. Cutler is not a third-party beneficiary of the Montgomery development agreements.

Montgomery argues Mr. Cutler's breach of contract claim fails because he does not plausibly allege the Cutler Group or Montgomery intended to make him a third-party beneficiary under any Montgomery development agreements. Mr. Cutler responds he is an implied third-party beneficiary under the agreements because "if Western prevails [in the underlying suit], Mr. Cutler is the ultimate provider of the security to Montgomery."[19] We agree with Montgomery.

To assert a breach of contract claim, a plaintiff must either be a party to the agreement or a third-party beneficiary of the agreement.[20] "Whether a party is a third-party beneficiary with standing to enforce a contract is question of law for the Court."[21] Third-party beneficiary status can be conferred in one of two ways in Pennsylvania.[22] First, a party is considered a third-party beneficiary when "both contracting parties . . . have expressed an intention that the third party be a beneficiary, and that intention . . . affirmatively appear[s] in the contract itself."[23] When the contracting parties do not affirmatively state their intent, an individual may still be considered a third-party beneficiary if "the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and the performance satisfies an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance."[24]

Mr. Cutler does not allege facts from which we could infer the Cutler Group and Montgomery intended to make him a third-party beneficiary of the Montgomery development agreements. Nor does he attach the relevant agreements from which we could ascertain the contracting parties' intentions. Mr. Cutler instead offers one conclusory allegation: "Cutler, the CEO and majority owner of the Cutler Group, was a third-party beneficiary of the…[d]evelopment [a]greement[s]." He then asks us to infer he is a third-party beneficiary of the development

agreements solely based on his ownership and position in the Cutler Group. Mr. Cutler does not cite authority – nor can we find any – in which a court disregarded the corporate form and inferred third-party beneficiary status in this way. We decline to do so.

Our Court of Appeals in *Tredennick v. Bone* affirmed the dismissal of a breach of contract claim asserted by a majority shareholder of a contracting party, concluding the majority shareholder was not a third-party beneficiary.[25] Our Court of Appeals explained, "[e]ven though [plaintiff] is the majority shareholder in [contracting party], holding 92% of its capital stock, she was not an intended third-party beneficiary of the contract because, under Pennsylvania law, a party becomes a third party beneficiary 'only where both parties to the contract express an intent to benefit the third party in the contract itself.'"[26] The contract at issue explicitly stated the substance of the contract "may not be relied upon by any third party," and therefore expressly disclaimed any intent to create any third-party beneficiaries.[27]

Mr. Cutler chose not to share the language of the Montgomery development agreements. He also offers no authority to support his position. We conclude Mr. Cutler fails to meet his burden in alleging facts demonstrating Montgomery and the Cutler Group intended to benefit Mr. Cutler when they executed the Montgomery development agreements.[28] We cannot, consistent with *Tredennick*, make this inference solely based on his ownership stake in the Cutler Group. We dismiss Mr. Cutler's breach of contract claim against Montgomery without prejudice.

### B. Mr. Cutler's unjust enrichment claim fails because he fails to allege he conferred a benefit on Warwick or Montgomery.

Warwick and Montgomery argue Mr. Cutler fails to plausibly allege his alternative unjust enrichment claim because he did not confer a benefit on them. They further argue Cutler Group rather than Mr. Cutler provided the only possible and disputed benefit in starting the developments before filing bankruptcy and leaving the projects. Mr. Cutler essentially argues he may confer a

6

benefit on Warwick and Montgomery if Western Surety prevails in its underlying suit against him. We agree with Warwick and Montgomery.

Unjust enrichment is an equitable doctrine under which "the law implies a contract between the parties pursuant to which the plaintiff must be compensated for the benefits unjustly received by the defendant."[29] To state a claim for unjust enrichment under Pennsylvania law, Mr. Cutler must allege (1) he conferred a benefit on Montgomery and Warwick; (2) Montgomery and Warwick knew of the benefit and accepted or retained it; and (3) it would be inequitable to allow Montgomery and Warwick to keep the benefit without paying for it."[30]

The "key inquiry in determining whether a Pennsylvania unjust enrichment claim may proceed is whether the defendant received a benefit *unjustly*, and …while direct conferral of a benefit is not required, the relationship between a plaintiff and defendant may not be too remote."[31] Mr. Cutler accordingly "need not have directly dealt with [Montgomery and Warwick] in order to allege a claim of unjust enrichment against them" because a claim of unjust enrichment requires only that Mr. Cutler confer a benefit on Montgomery and Warwick; "it does not require that [Mr. Cutler] 'directly confer' those benefits."[32] "It is clear, however, that the benefit to [Montgomery and Warwick] must be more than remote to support an unjust enrichment claim."[33]

Mr. Cutler fails to allege a fact from which we can infer he conferred a benefit upon Montgomery and Warwick either indirectly or directly. Mr. Cutler seems to concede parties other than him conferred a benefit upon Montgomery or Warwick. He alleges, for example, "[Warwick and Montgomery]'s receipt and retention of settlement funds *from Western* for work not completed…constitutes unjust enrichment" and "Montgomery extracted $900,000 *from the Cutler Group's* letters of credit."[34] In his responses to Warwick and Montgomery's motions, he similarly argues "Montgomery has received approximately $622,000 in funds from bonds issued *by Western*

7

securing performance of *the Cutler Group*" and "Warwick has received approximately $655,000 in funds from bonds issued *by Western* securing performance of *the Cutler Group*."[35] He does not allege a fact from which we can infer purported benefits somehow came from Mr. Cutler individually.

As Warwick points out, Mr. Cutler's unjust enrichment claims against Montgomery and Warwick appear to stem from his dissatisfaction with Western Surety's negotiation – and subsequent payment – of settlement amounts with Montgomery and Warwick. He is entitled to – and has – asserted such defenses in his suit against Western Surety.[36] He cannot, however, transform his dissatisfaction preserved in affirmative defenses to the indemnity claims filed by Western Surety into an unjust enrichment claim against parties with whom he did not have an agreement and upon whom he did not confer a benefit.[37]

## III. Conclusion

We grant Warwick's motion with prejudice as to the breach of contract claim and without prejudice as to the unjust enrichment claim. We grant Montgomery's motion without prejudice.

---

[1] ECF Doc. No. 14 ¶¶ 4, 9.

[2] *Id.* ¶¶ 5, 10.

[3] *Id.* ¶¶ 6, 11.

[4] *Id.* ¶ 1.

[5] ECF Doc. No. 26-1 at 44. Warwick attaches to its Motion two development agreements between Warwick and the Cutler Group from 2006 and 2008. "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). An exception to this general rule is that "a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary

judgment." *Id.* (citations and quotations omitted). We may consider the development agreements between Warwick and the Cutler Group because Mr. Cutler bases his claims on these agreements. *See Tomaszewski v. Trevena, Inc.*, No. 18-4378, 2020 WL 5095865, at *4-*5 (E.D. Pa. Aug. 28, 2020) ("[W]hat is critical is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited.") (citations omitted).

[6] ECF Doc. No. 26-1 at 46-47, 98

[7] ECF Doc. No. 14 ¶ 14.

[8] *Id.* ¶¶ 15, 17.

[9] *Id.* ¶ 20.

[10] *Id.* ¶ 23.

[11] *Id.* ¶¶ 21, 23.

[12] *See* ECF Doc. No. 1.

[13] ECF Doc. No. 10 at 5.

[14] *See* ECF Doc. No. 14 ¶¶ 24-25.

[15] Federal Rule of Civil Procedure 12(b)(6) requires a complaint to state a claim upon which relief can be granted. Fed. R. Civ. P. (12)(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104, n. 5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim has facial plausibility when the plaintiff pleads factual content … allow[ing] the court to draw the reasonable inference … the defendant is liable for the misconduct alleged." *Robert W. Mauthe M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility … a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C.,* 806 F. App'x at 152 (quoting *City of Cambridge Ret. Sys. v. Altisource Asset*

*Mgmt. Corp.*, 908 F.3d 872, 878-79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that … 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations, …, and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Labs. LLC v. Thanoo*, No. 19-3707, 2021 WL 2325127, at *7 (3d Cir. June 8, 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[16] Montgomery does not attach the relevant development agreements to its motion.

[17] ECF Doc. No. 30 at 10 n.1.

[18] ECF Doc. No. 29 at 10.

[19] *Id.* at 13.

[20] *See Republic Servs. of Pennsylvania LLC v. Caribbean Operators LLC*, 301 F. Supp. 3d 468, 476 (E.D. Pa. 2018).

[21] *Guerra v. Springdell Village Homeowners Ass'n*, No. 11-200, 2011 WL 1303360, at *2 (E.D. Pa. Apr. 6, 2011) (citing *Shumate v. Twin Tier Hospitality, LLC*, 655 F. Supp. 2d 521, 535 (M.D. Pa. 2009)).

[22] *See Scarpitti v. Weborg*, 609 A.2d 147, 150-51 (Pa. 1992).

[23] *Id.* at 149 (citation omitted).

[24] *Id.* at 150-51.

[25] 323 F. App'x 103, 104 (3d Cir. 2008).

[26] *Id.* (quoting *Scarpitti v. Weborg*, 609 A.2d 147, 150 (Pa. 1992)).

[27] *Id.*

[28] *See Wawrzynek v. Statprobe, Inc.*, 422 F. Supp. 2d 474, 483 (E.D. Pa. 2005) (dismissing breach of contract claim under a third-party beneficiary theory where the plaintiffs failed to allege facts showing the contracting parties intended to benefit plaintiffs, and similarly situated individuals, when they executed the at-issue contract); *Republic Servs.*, 301 F. Supp. 3d at 477 (dismissing breach of contract claim "where the purpose of the contract…was not to benefit [plaintiff] to any extent that the circumstances compel recognizing [plaintiff] as a third party beneficiary").

[29] *Oxford Finance LLC v. McLellan*, No. 19-4839, 2020 WL 1975072, at *3 (E.D. Pa. Apr. 23, 2020) (quoting *Styer v. Hugo*, 619 A.2d 347, 350 (Pa. Super. 1993), *aff'd*, 535 Pa. 610 (1994)).

[30] *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 492 (E.D. Pa. 2016) (citing *Mitchell v. Moore*, 729 A.2d 1200, 1203-04 (Pa. Super. Ct. 1999)).

[31] *Oxford Finance*, 2020 WL 1975072 at *3 (quoting *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 444 (E.D. Pa. 2010)) (emphasis in original).

[32] *Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 420 (E.D. Pa. 2006).

[33] *Century Indem. Co. v. URS Corp.*, No. 08-5006, 2009 WL 2446990, at *6 (E.D. Pa. Aug. 7, 2009) (citation omitted).

[34] ECF Doc. No. 14 ¶¶ 47, 53-54 (emphasis added).

[35] ECF Doc. No. 29 at 10; ECF Doc. No. 30 at 8.

[36] Mr. Cutler has asserted such defenses in his answer to Western Surety's complaint. *See* ECF Doc. No. 10 at 5 (asserting affirmative defenses which state "Western's claims are barred, in whole or in part, by Western's failure to mitigate its damages" and "Western's claims are barred, in whole or in part, because Western's damages were caused by Western's conduct").

[37] To the extent Mr. Cutler bases his unjust enrichment claims against Montgomery and Warwick on any damages Western Surety may receive from Mr. Cutler in the underlying lawsuit (which does not appear logical to us) his claim fails for the separate reason that unjust enrichment claims cannot be premised on potential future benefits. *See PMX Jewels Ltd. v. Ruvanni Inc.*, No. 14-243, 2014 WL 1725733, at *2-3 (E.D. Pa. May 1, 2014) ("Defendants' counterclaim relies on speculation that Plaintiff will receive a future benefit if it is successful in its litigation. It is clear that a potential future benefit is insufficient to satisfy the first element of an unjust enrichment claim. Therefore, Defendants' counterclaim does not state a claim for unjust enrichment.").